HOME INSURANCE COMPANY, a corporation, Joseph D. Footer and Sarah Footer, Appellants,

v.

Bonnie C. EGGLESTON and Robert S. Dorsey, Appellees.

Robert S. DORSEY, Appellant,

v.

HOME INSURANCE COMPANY, a corporation, Joseph D. Footer, Sarah Footer, and Bonnie C. Eggleston, Appellees.

Nos. 2703, 2704.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 20, 1961.

Decided May 19, 1961.

Samuel W. McCart, Washington, D. C., for appellants in No. 2703 and for appellees Home Ins. Co., Joseph D. Footer and Sarah Footer, in No. 2704.

Wm. Edison Owen, Washington, D. C., for appellee Dorsey in No. 2703 and for appellant Dorsey in No. 2704.

Francis C. O'Brien, Washington, D. C., for appellee Eggleston in Nos. 2703 and 2704. William T. Clague, Washington, D. C., also entered an appearance for appellee Eggleston in Nos. 2703 and 2704.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

HOOD, Associate Judge.

This action arose out of a collision between two automobiles in a downtown street intersection at an early hour in the morning. One automobile, traveling west, was driven by Dorsey; the other, traveling north, was driven by Eggleston. As a result of the collision Eggleston's automobile crashed into a store at the northwest corner of the intersection, damaging the building and a portion of the store's contents. The owner of the building and the operators of the store, the Footers, were both insured through Home Insurance Company, which paid the owner in full for the damages and paid the Footers partially for their damages. Home Insurance Company, as subrogee, and the Footers then brought this action against Dorsey and Eggleston. Trial without a jury resulted in a judgment against Dorsey but in favor of Eggleston. Home Insurance Company, the Footers, and Dorsey have all appealed.

Dorsey claims that he was denied a fair trial because, as he says, the trial was conducted in a manner "bent only on humiliating and punishing appellant [Dorsey] and his counsel in utter disregard of everyone's rights." The other appellants say that the trial court was so prejudiced against Dorsey that he ignored their evidence against Eggleston. Determination of these claims of error necessitates examination of the entire record of the trial proceedings.

At an early stage in the trial the judge stated that he wished to dispose of the case on that day and indicated several times that he felt Mr. Owen, attorney for Dorsey, was unnecessarily prolonging his cross-examination, and on one occasion stated: "Mr. Owen, if you make any other comments like that, I will proceed accordingly." A little later on when Mr. McCart, attorney for Home Insurance, objected to a question propounded by Mr. Owen in cross-examination, the judge replied:

"Well, it must be apparent to you gentlemen now what the problem is.

We cannot hope to train a person or straighten out all of these problems at this time in the Courtroom. This is a mode of expression. We cannot train him now, so we had better just go ahead and do the best we can."

Again in the course of Mr. Owen's cross-examination of another witness the judge interrupted to say:

"Gentlemen, I apologize to you. Under our system anybody who passes the bar is entitled to practice law. This gentleman passed the bar, therefore, as I have explained it to you we have to let him continue. So, Mr. Witness, just answer these questions. Do not take any umbrage. He does not know any better and cannot be trained.

\* \* \* \* \* \*

"We have to indulge him, on account of his client. We have to see that his client is given every protection in this matter."

And again during Mr. Owen's cross-examination of the same witness, the judge interrupted to remark concerning Mr. Owen:

"You see, he is a little slow in catching the point. Indulge him, please."

And when the witness was attempting to answer a question put by Mr. Owen, the judge said to the witness:

"No. No. Just answer the question, no matter how fatuous it is, just answer the question."

Later in the trial Mr. O'Brien, counsel for Eggleston, suggested a settlement might be reached at that stage of the proceedings, and asked a short recess for the purpose of exploring the possibilities of settlement. The judge granted the recess, admonishing counsel not to take more than five or ten minutes because of the judge's desire to complete the case that day, and said:

"We are up against the proposition here that Mr. Owen has no sense of

relevancy so far as the testimony which he seeks to bring out, and he simply cannot see, so far as I can observe, the point that is to be reached in each of these matters. That being so, and unfortunately it is, he is liable to keep us here unduly."

Efforts at settlement were not successful and trial was resumed. Plaintiffs' case was closed and Mr. O'Brien then stated:

"Your Honor, we have agreed between defense counsel that Mr. Dorsey's case will be put on first, and then we will take our case next."

Dorsey then testified and while he was being cross-examined by Mr. McCart, the following occurred:

"The Court. Well, let me ask you a question, sir.

"Mr. McCart. Yes, your Honor.

"The Court. Mr. Owen, is that your case?

"Mr. Owen. Sir?

"The Court. That is your case?

"Mr. Owen. The only thing I have overlooked is his statement as to the amount of the damages done to his car, that is all.

"The Court. All right. It is unnecessary to cross-examine this man. Go ahead.

"Mr. McCart. Thank you, your Honor."

Mr. McCart ceased his cross-examination and Dorsey was briefly cross-examined by Mr. O'Brien. The judge then inquired of Mr. Owen whether he had any other evidence to present and upon Mr. Owen's negative reply the judge indicated the case was closed and inquired if Mr. Owen wished to argue the matter. At this point Mr. O'Brien, whose client Eggleston had not testified, spoke up and the following occurred:

"Mr. O'Brien. How about my case?

"The Court. You adopt what is going on at this stage of the proceedings, do you not?

"Mr. O'Brien. Yes, your Honor.

"The Court. Very well.

"Mr. McCart. I would like to be heard in argument on this matter, if your Honor please.

"The Court. I would like to hear from Mr. Owen.

"Mr. McCart. But—

"The Court. All right, Mr. Owen, I want to hear from you."

Mr. Owen proceeded with his argument, and at its conclusion the following occurred:

"The Court. Have I heard you fully, Mr. Owen?

"Mr. Owen. Yes, you have, I have nothing else to say.

"Mr. McCart. I would like to make some comments, now, your Honor.

"The Court. That will not be necessary. No."

The judge then proceeded to render his decision, holding Dorsey, whom he characterized as a "mighty fibber" and as one "not telling the truth," liable to the plaintiffs for $916.53, and exonerating Eggleston from all liability.

 Enough of the proceedings has been recited to substantiate appellants' claim that they were denied a fair trial. A judge has the right, and it is his duty, to see that a trial is conducted in an orderly manner and to prevent improper conduct by counsel, litigants or witnesses, but no judge in the course of a trial is justified in making a series of disparaging remarks concerning a lawyer's training and ability. Whether so intended or not, such remarks create an atmosphere of hostility on the part of the judge which prevents, or at least appears to prevent, the fair and impartial

trial to which a litigant is entitled. It has been said more than once that not only should a trial be fair but it should also appear to be fair. When a judge displays an attitude of hostility or bias against a lawyer, it is only natural that the client feels that the judge entertains the same feeling for him and that he is not receiving a fair trial.

That the attitude of the judge towards Mr. Owen may have extended to his client is a distinct possibility. When Dorsey's defense was completed, the case was terminated without any defense from the co-defendant Eggleston. Mr. McCart, attorney for the plaintiffs, was not called upon—indeed, was not permitted—to argue the case; and it must be remembered that he was seeking judgment against both Eggleston and Dorsey. Dorsey's attorney alone was called upon for an argument, and then judgment went against Dorsey alone. Eggleston, without evidence or argument on his behalf, was freed from liability.

The record convinces us there must be a new trial as to all parties on all issues.

Judgments reversed with instructions to grant a new trial.